IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JERMESHIA M. DALE,                    :
                                      :
        Plaintiff,                    :
                                      :
vs.                                   :
                                      :        CIVIL ACTION 14-0227-M
CAROLYN W. COLVIN,                    :
Social Security Commissioner,         :
                                      :
        Defendant.                    :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3),
Plaintiff seeks judicial review of an adverse social security
ruling which denied claims for disability insurance benefits and
Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 12-13).
The parties filed written consent and this action has been
referred to the undersigned Magistrate Judge to conduct all
proceedings and order the entry of judgment in accordance with
28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 20).  Oral
argument was waived in this action (Doc. 19).  After considering
the administrative record and the memoranda of the parties, it
is **ORDERED** that the decision of the Commissioner be **REVERSED** and
that this action be **REMANDED** for further procedures not
inconsistent with the Orders of the Court.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance."  *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Dale was twenty-eight years old, had completed two years of education (Tr. 43), and had previous work experience as a short order cook, steward, waitress, cashier and teacher's aide (*see* Tr. 58).  In claiming benefits, Plaintiff alleges disability due to degenerative disc disease of the lumbar spine, cervicalgia, asthma, hypertension, obesity, and headaches (Doc. 12 Fact Sheet).

The Plaintiff filed applications for disability benefits and SSI on March 14, 2011, alleging a disability onset date of December 27, 2010 (Tr. 132-45; *see* Tr. 19).  Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although Dale could not return to her past relevant work, there were specific light work jobs that she

could perform (Tr. 19-30).  Plaintiff requested review of the hearing decision (Tr. 8) by the Appeals Council, but it was denied (Tr. 1-6).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Dale alleges the following:  (1) The Appeals Council failed to properly consider newly-submitted evidence; Plaintiff further alleges that the ALJ did not properly consider (2) the conclusions of her treating physician; (3) her pain and the effects of her medications; and (4) her own testimony (Docs. 12, 13). Defendant has responded to—and denies—these claims (Doc. 15). The relevant[1] evidence of record follows.

On October 26, 2010, Dale went to Tri-County Medical Center in Atmore for low back pain for more than two months that she rated as nine on a ten-point scale; she had also had headaches twice a week for several months (Tr. 236).  The doctor noted no tenderness in the lumbosacral area; gait was normal and straight leg raising was normal.  Amitriptyline,[2] Mobic,[3] and Lortab[4] were

---

[1]Plaintiff's alleged date of disability is December 27, 2010 (*see* Tr. 19), so the Court will not review herein the evidence that pre-dates that by more than several months.  Likewise, the Court notes that Dale has not challenged the ALJ's finding that she has no severe mental impairment, so the Court will not review that evidence.

[2]**Error! Main Document Only.***Amitriptyline*, marketed as *Elavil*, is used to treat the symptoms of depression.  *Physician's Desk Reference* 3163 (52nd ed. 1998).

[3]*Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis.  *Physician's Desk Reference* 855-57 (62nd ed. 2008).

prescribed.

On December 15, 2010, a doctor with the Atmore Family Medicine determined that Dale had spinal stenosis of the lumbar region and prescribed ultram[5] (Tr. 241).  An MRI of the lumbar spine confirmed the diagnosis on March 22, 2011 (Tr. 245).

On March 15, 2011, (Tr. 252-55), Plaintiff went to North Baldwin Hospital complaining of chronic back pain that was worse with movement and relieved by nothing; decreased range of motion (hereinafter *ROM*) was noted although motor skills, sensation, and reflexes were normal.  The assessment was chronic, lumbosacral strain.

On June 20, 2011, Dr. David Fairleigh examined Dale for lower extremity back pain that she rated as nine (Tr. 311-14). Fairleigh noted Plaintiff to be in no acute distress with very slow, guarded, gait, though it was non-antalgic; she was guarded when moving from a sitting to standing position.  There was some limitation of movement "in all planes of flexion, extension, lateral bending and rotational movements to the low back area" (Tr. 313).  Sensory was symmetrical and intact; motor strength was full in all muscle groups while motor strength reflexes were

---

[4]*Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).
[5]*Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain." *Physician's Desk Reference* 2218 (54th ed. 2000).

reduced to the lower extremities.  The Doctor prescribed Talwin and Flexeril[6].  On July 1, 2011, Fairleigh found Dale in mild distress and discomfort, noting that palpation was tender in the facet joints, sacroiliac joints, and paraspinous muscles; he gave her an injection (Tr. 309-10).

On July 12, Dr. Sid Crosby examined Dale for moderate ongoing low back pain; on examination, the Doctor noted that Plaintiff was obese and appeared to be uncomfortable and in pain (Tr. 322-24).  Dale was re-prescribed Ultram, Flexeril, and Talwin and was referred to physical therapy.  Three days later, Crosby saw Plaintiff for an ingrown, infected toenail for which he prescribed Keflex[7]; back pain was listed as a chronic disease but nothing more was stated about it (Tr. 319-21).  On July 18, a Therapist indicated that Dale's ability to stand, walk, and squat was 40% while bending was only 20%; the Therapist further indicated that Plaintiff's ROM was 50% on flexion, extension, and right side bending while it was only 25% on left side bending (Tr. 325-26).  Twelve physical therapy sessions were recommended.  On July 27, Dr. Crosby noted Dale's assertion that therapy had helped her pain; he noted that while she was in no acute distress, there was tenderness in the upper lumbar area

---

[6]Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

[7]**Error! Main Document Only.***Keflex* is used for the treatment of various infections.  *Physician's Desk Reference* 854-56 (52nd ed. 1998).

and Plaintiff had decreased ROM (Tr. 315-18).

On August 25, 2011, Dr. Fairleigh noted that Plaintiff had difficulty arising from a sitting position; the diagnosis was lumbar spondylosis and back and lower extremity pain (Tr. 346). Dale denied seeing multiple physicians to obtain narcotics; a urine drug screen showed no inappropriate medication abuse.

Medical notes on September 23 from West Florida Orthopedics indicate that Dale had been referred by Dr. Fairleigh for back and bilateral leg pain (Tr. 327-32).  Plaintiff was in no acute distress and had full strength in all lower extremity motor groups; she had "a global stocking-like decrease in fine touch on the right;" straight leg raise was positive on the right (Tr. 329).  Dale's back anatomy was normal; ROM was not tested. Based on an MRI study, the Doctor diagnosed "right paracentral L4-L5 HNP with right greater than left lateral recess stenosis and foraminal stenosis on the right, back pain greater than leg pain;" he indicated that surgery might be indicated after further testing (Tr. 329).

Physical Therapy records from October 18 note Dale's compliance with her exercise activities and an acknowledgment of fifty percent improvement; the Therapist noted Plaintiff's improvement in walking, sitting, standing, squatting, and bending (Tr. 361).  The Therapist noted a decrease in trunk flexion ROM, but progress overall.

6

On October 24, Dr. Crosby noted tenderness in the midline lumbosacral region; straight leg raise was negative and ROM was normal (Tr. 355-357).

On November 17, 2011, Dr. Fairleigh noted that Dale arose from a seated position with difficulty; she had an antalgic gait (Tr. 344). ROM was limited and diffusely tender. The Doctor's diagnosis was spondylosis for which he recommended lumbar discography; Dale was strongly urged to quit smoking (Tr. 345).

On January 29, 2012, Plaintiff went to the Jackson Medical Center Emergency Room in mild distress for left shoulder and neck pain; she had decreased ROM in the shoulder (Tr. 334-41). Reflexes and finger grip were equal bilaterally in the upper extremities; as she was pregnant, Dale was told to take Tylenol extra strength and was given a prescription for Flexeril.

On March 5, Dr. Crosby's lumbar examination of Plaintiff showed normal palpation, negative straight leg raise, and normal ROM (Tr. 352-54).

On March 12, Dr. Fairleigh noted that Dale had difficulty arising from a seated position and had an antalgic gait; ROM was limited and there was increased tone and trigger points over the splenius cervicis, upper trapezius, and levator scapulae muscle groups (Tr. 343). Motor and sensory exam were normal in the upper extremities. An injection was given; it was noted that the discography would have to wait as she was pregnant.

Radiological exams demonstrated mild cervical kyphosis from C2
through C4 though the cervical vertebral body and intervertebral
disc heights were well-maintained (Tr. 347).

On April 4, 2012, Physical Therapy records note Dale's
claim of increased pain—rated as six—in her back and shoulder
because of her pregnancy; however, right leg pain had decreased
and movement was better (Tr. 358-59).  Bending and reaching
aggravated the pain.  The Therapist noted that Plaintiff's ROM
was improved in her trunk and left shoulder; she also had
increased movement in her shoulder and hips.  Nevertheless, the
Therapist thought that another month of therapy was required.

On July 20, Dr. Priscilla Durand-Mitchelle noted
Plaintiff's complaints of blurred vision, an inability to hold
things, and muscle spasms, especially when driving; her back
pain registered at eight on good days and ten on bad days and
the pain medications provided no relief (Tr. 348-50).  The
Doctor noted that Dale was positive for paresthesias in her
hands and feet; she had full ROM with pain on forward flexion of
her neck.  Durand-Mitchelle further noted no clubbing, cyanosis,
or edema of the lower extremities with full ROM and normal gait.

On August 20, Dr. Durand-Mitchelle examined Dale, finding
her in no acute distress; she noted that her neck was nontender
to palpation (Tr. 363-64).  The Doctor's musculoskeletal
evaluation demonstrated no clubbing, cyanosis, or edema of the

lower extremities; her diagnosis was hypertension, muscle spasm, tobacco use disorder, and cervicalgia.  On that same date, Durand-Mitchelle completed a pain questionnaire in which she indicated that Dale's pain would frequently distract her from adequately performing work activities (Tr. 362).  The Doctor further indicated that medication side effects could be expected to be severe and limit Plaintiff's effectiveness in performing work-related activities.  The Doctor also completed a physical capacities evaluation indicating that Plaintiff was capable of sitting for one hour and standing/walking for one hour at a time and could sit for four hours and stand/walk for two hours during an eight-hour workday (Tr. 368).  Dale could lift and carry ten pounds frequently and twenty pounds occasionally, but never more than that.  She was capable of using her hands for simple grasping, fine manipulation, and the pushing and pulling of arm controls; likewise, she could use both feet in repetitive movements in pushing and pulling leg controls.  On occasion, Plaintiff could bend, squat, and reach, but she could never crawl or climb.

At the evidentiary hearing, Dale testified that she was the mother of three children, ranging from two months old to eight years old, and that she lived with her parents (Tr. 41-42; *see generally* Tr. 41-56, 62-64).  Plaintiff's parents or aunt cared for her baby and got the other two children ready for school

most of the time because she was unable to do so (Tr. 62-64). At the hearing, Dale was wearing an air cast on her right ankle for a sprain (Tr. 43). Plaintiff last worked for a month, twenty months earlier, as a cook but had to quit because she could not get out of bed or stand up without assistance (Tr. 45). Dale stated that she could not work because of bad headaches with blurry vision; painful muscle spasms in her back, radiating into her arms and legs, caused her to drop things (Tr. 42, 48). She said that her pain was constant but was really sharp half of the time (Tr. 49). Plaintiff testified that her medications—Flexeril, Lyrica, Zoloft, Tramadol, and Talwin— caused her to sleep several hours after taking them; her medicines were mostly ineffective except when she slept (Tr. 48-50, 56). Dale would resort to lying down, propping her upper body up, and using a heating pad to alleviate the pain; she had to lie down about five hours every day (Tr. 50, 56). Plaintiff testified that she could walk for ten minutes, stand for ten minutes, and sit for thirty minutes (Tr. 50). Dale has no problems getting along with people, though she tended to stay to herself (Tr. 51). Plaintiff was unable to perform household chores and relied on her mother to do them (Tr. 52). Dale occupied her time with reading and watching tv; she had isolated herself because of her pain (Tr. 53-55).

This concludes the Court's review of the evidence.

In bringing this action, Dale first claims that the Appeals Council failed to properly consider newly-submitted evidence (Doc. 13); Defendant has argued that the evidence should not be considered (Doc. 15, pp. 2-5).  The evidence appears in the record at Doc. 13, pp. 4-8.

It should be noted that "[a] reviewing court is limited to [the certified] record [of all of the evidence formally considered by the Secretary] in examining the evidence."  *Cherry v. Heckler*, 760 F.2d 1186, 1193 (11th Cir. 1985).  However, "new evidence first submitted to the Appeals Council is part of the administrative record that goes to the district court for review when the Appeals Council accepts the case for review as well as when the Council denies review."  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1067 (11th Cir. 1994).  Under *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1264 (11th Cir. 2007), district courts are instructed to consider, if such a claim is made, whether the Appeals Council properly considered the newly-submitted evidence in light of the ALJ's decision.  To make that determination, the Court considers whether the claimant "establish[ed] that:  (1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit

the evidence at the administrative level." *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

In examining the action at hand, the Court notes that the Appeals Council denied review of the additional evidence, returned it to Dale, and indicated that the evidence could be used in filing a new claim (Tr. 2).  The Appeals Council determined that the medical information submitted was generated following the ALJ's decision of September 14, 2012 and did not related to the period preceding that date (Tr. 2).

The Court notes that an MRI of the cervical spine performed on October 22, 2012 at Atmore Community Hospital revealed the following medical evidence and impression:

> There is mild desiccation of the C3 to C7 discs with some mild disc protrusion at C3-4 and C4-5 displacing the CSF anterior to the cord.  The spinal canal is relatively narrowed from C3 to C6 and this is most likely congenital.  There is protrusion right posterolateral [sic] into the right neural foramen of C3-4 causing moderate right neural foraminal stenosis and bilaterally posterolaterally at C4-5 with there being mild to moderate neural foraminal stenosis.  The other disc spaces shows [sic] no abnormality.  The spinal cord is normal in size and intensity pattern.
>
> IMPRESSION:  Mildly narrowed spinal canal from C3 to C6 with mildly protruding discs at C3 to C5 with both areas displacing the CSF anterior to the cord and there is right neural foraminal stenosis of moderate degree of C3-4 and bilaterally of mild to moderate degree at C4-5.

(Doc. 13, p. 8).

The Court notes that this is the first MRI of the cervical spine completed in this medical record.  However, Dale first complained of neck pain and decreased ROM in her left shoulder in January 2012 at the Emergency Room for which she received Flexeril (Tr. 334-41).  In March, Dr. Fairleigh noted limited ROM and increased tone and trigger points over the splenius cervicus, upper trapezius, and levator scapulae muscle groups for which she was given an injection (Tr. 343); x-rays demonstrated mild cervical kyphosis from C2 through C4 (Tr. 347).  In April, a Physical Therapist noted that Dale did not have full ROM in her shoulder and recommended further therapy (Tr. 358-59).  In July, Dr. Durand-Mitchelle found paresthesias in Dale's hands and feet; she had full ROM with pain on forward flexion of her neck (Tr. 348-50).  The next month, Durand-Mitchelle diagnosed Plaintiff to have cervicalgia (Tr. 363-64).

The Court finds that the three-prong standard has been met. The first prong is satisfied because the evidence is new and provides evidence of an impairment already asserted.  The second prong is met because there is a reasonable possibility the ALJ would change her opinion of Dale's impairment and her complaints of pain and limitation; the Court cannot—and will not—find that this new evidence mandates a disability finding, but it does

warrant additional consideration.  The third prong is satisfied because the evidence did not exist at the time the ALJ rendered her decision.  Though the Appeals Council considered the evidence, it determined that it was not new evidence that should be considered by the ALJ; that decision was wrong.

Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for the gathering of additional evidence.  For further procedures not inconsistent with this recommendation, see *Shalala v. Schaefer*, 509 U.S. 292 (1993).  Judgment will be entered by separate Order.

DONE this 6th day of January, 2015.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE